**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KAREN L. WORTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-06-950-M |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Karen Wortman, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Ms. Wortman's application for disability insurance benefits. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.   Procedural Background**

Upon remand from the Appeals Council, an administrative law judge (ALJ) conducted a hearing on January 11, 2006, *see* AR 325-343, and following that hearing, the ALJ issued

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

an unfavorable decision on April 24, 2006. AR 14-20. The Appeals Council denied Ms. Wortman's request for review, and the decision of the ALJ became the final decision of the Commissioner. AR 7-9.

## II.     The Administrative Decision

The ALJ applied the five-step sequential evaluation process. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also* 20 C.F.R. § 404.1520. The ALJ found at step one that Ms. Wortman had not engaged in substantial gainful activity since her alleged disability onset date of May 19, 1999. AR 16, 19. At step two, the ALJ determined that Ms. Wortman has degenerative disc disease and neuropathic pain syndrome of the right hand and further determined that these impairments are severe within the meaning of the Social Security regulations. AR 16, 19. At step three, the ALJ considered the listings at 1.04 (Disorders of the Spine), 12.04 (Affective Disorders) and 14.06 (Undifferentiated Connective Tissue Disease) and determined that Ms. Wortman's impairments do not meet or equal any of these listings.

The ALJ next determined Ms. Wortman's residual functional capacity (RFC). The ALJ found Ms. Wortman has the RFC to perform a wide range of light work limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling and that Ms. Wortman has "a limited ability to feel the right hand" and should not work in a situation where she is exposed to unprotected heights or dangerous machinery. AR 18, 19. At step four, the ALJ found that Ms. Wortman could perform her past relevant work as a convenience store clerk, a fast food worker and a janitor as those jobs are generally

performed. AR 18, 19. Alternatively, the ALJ found at step five of the sequential evaluation process that Ms. Wortman could perform a variety of jobs that exist in significant numbers in the national economy including film counter clerk, order filer, food checker, telephone answering service operator and office helper. AR 18, 20. Therefore, the ALJ determined Ms. Wortman is not disabled. AR 19, 20.

### III.     Issues Presented for Judicial Review

Mr. Wortman challenges the Commissioner's decision on the following grounds: (1) testimony elicited by hypothetical questions to the vocational expert (VE) did not relate with precision all of Ms. Wortman's impairments that the ALJ found in his RFC finding; (2) the ALJ's credibility analysis is contrary to the law and is not otherwise supported by substantial evidence; and (3) the ALJ failed to fully develop the record because he did not request medical records ordered by the Appeals Council and he failed to obtain updated medical records through the insured period.[2]

### IV.     Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395

---

[2] Ms. Wortman is insured for disability benefits through December 31, 2004. AR 15.

F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

V.     **Analysis**

       A.     **The ALJ's Hypothetical Questions to the VE**

Ms. Wortman claims the ALJ's hypothetical questions to the VE failed to include the RFC determination that she has a "limited ability to feel the right hand." AR 18, 19. It is well-established that hypothetical questions to the VE must relate with precision all of a claimant's impairments; otherwise, the VE's testimony cannot constitute substantial evidence to support the Commissioner's decision. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

The ALJ's hypothetical questions to the VE included a limitation of no more than "frequent" handling and fingering with the right hand. AR 340. Ms. Wortman contends this limitation is not the same as the limitation contained in the RFC, a "limited ability to feel the right hand." The Commissioner responds that the ALJ included the "functional

consequences of this loss of feeling in the right hand, such that Plaintiff could perform no more than frequent handling and fingering with the right hand." *See* Brief in Support of the Commissioner's Decision [Doc. #20] at 6. In addition, the Commissioner contends that none of the jobs identified by the ALJ at either step four or step five require feeling and, therefore, "the ALJ's hypothetical question captured the functional consequences of all of Plaintiff's impairments." *See id.* at 7.

However, as the Tenth Circuit has made clear, the hypothetical question to the VE must relate with precision a claimant's impairments, not "capture the functional consequences" of a claimant's impairments. Whether a "limited ability to feel the right hand" is the same as a limitation of "frequent handling and fingering" requires further testimony by the VE. And, whether a limited ability to feel the right hand impacts a claimant's ability to perform jobs that do not require feeling also requires further development through VE testimony. Without such testimony addressing the precise limitation set forth in the ALJ's RFC, the VE's testimony is not substantial evidence to support the ALJ's disability determination. Therefore, a remand is required.[3]

---

[3]The Court notes that according to the Dictionary of Occupational Titles (DOT), the following jobs identified by the ALJ require constant, not frequent, handling and/or fingering: DOT 211.462-014 (cashier checker); DOT 311.472-010 (fast-food worker); DOT 222.487-014 (order filler); and DOT 235.662-026 (telephone answering service operator). Therefore, it appears there is a conflict between the VE testimony and the DOT. This claim has not been specifically raised by Ms. Wortman and, therefore is not a basis for remand. Nonetheless, on remand, the ALJ is reminded of the duty to explain any conflicts between the VE's testimony and the DOT. *See Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999); *see also* Soc. Sec. Rul. 00-4p.

**B.    The ALJ's Credibility Analysis**

Plaintiff challenges the ALJ's credibility analysis on grounds that the ALJ discussed only medical evidence favorable to the nondisability determination, failed to give reasons for giving greater weight to the opinion of non-treating physicians and failed to consider additional factors critical to the credibility analysis. Those relevant factors include: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *3. *See also Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988) (listing other factors including "frequency of medical contacts, . . . subjective measures of credibility that are particularly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence").

Contrary to the ALJ's RFC determination that Ms. Wortman could perform a wide range of light work, Ms. Wortman testified that she experiences constant pain and migraine headaches causing her to sit in a recliner most of the day and rendering her unable to watch

television or read. AR 330-331. She also testified she experiences numbness in her hands, has limited ability to grasp, and cannot pick things up because she does not have the coordination "for the use of the fingers." AR 338-339. Ms. Wortman's complaints are supported by the objective medical and other evidence. *See, e.g.,* AR 82, 86, 138, 140, 141, 179, 188-189, 204-205, 210, 244, 252, 255.

The ALJ relied exclusively on the objective medical evidence to discount Plaintiff's credibility. He gave greater weight to the findings of the state agency consultants without explaining his reasons for doing so and without discussing additional probative evidence. For example, the ALJ rejected a July 1999 opinion of Dr. McArthur, a treating physician, who diagnosed Ms. Wortman with undifferentiated connective tissue disease, an autoimmune process which causes her widespread arthritis. Dr. McArthur opined that Ms. Wortman could not return to her job as a convenience store cashier and could only function in a sedentary type occupation with limitations on repetitive movements and repetitive use of her extremities. AR 177. The ALJ agreed with Dr. McArthur that Ms. Wortman could not perform her past relevant work "as the job was performed" by her, *see* AR 17, but rejected his findings of limitations on repetitive movements and repetitive use of the extremities. *See* AR 17. In rejecting Dr. McArthur's opinion, the ALJ failed to discuss additional medical evidence that tends to support the limitations found by Dr. McArthur. *See, e.g.,* AR 140 (Dr. Kilian: "[s]ince the age of 11 she has had a right hand incoordination and mild weakness in the same distribution"); AR 141 (Dr. Kilian: "[t]here is decreased coordination involving the finger of the right hand with impaired rapid alternating movements).

In addition, although the ALJ recited evidence regarding a May 2002 examination by Dr. Wolfe, a neurosurgeon, he did not give adequate reasons for rejecting this evidence. The ALJ stated only this about Dr. Wolfe's examination: "Upon physical examination conducted on May 16, 2002, significant positive findings were limited to weakness and numbness in the right upper extremity and pain with palpation of the rotator cuffs bilaterally." AR 17. The ALJ's description downplays the observations in Dr. Wolfe's treatment notes which include the following: "exquisite pain with palpation of the rotator cuff in both shoulders," "weakness of the wrist flexor, wrist extensions, grip muscles and intrinsic muscles on the right" and "sensory loss which is most prominent in the left hand." AR 205.

In addition, in December 1999, Dr. McClure opined that Plaintiff would be unable to return to her prior occupation due to her lumbar spine injury. AR 190. Dr. McClure opined that Ms. Wortman "will continue to experience pain, loss of normal range of motion, loss of strength, and loss of function of the lumbar spine in the future." AR 191. The ALJ did not mention Dr. McClure's opinion.[4]

It is well-established that an ALJ may not rely solely on favorable evidence without giving reasons for discounting evidence the ALJ chose not to rely upon. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (ALJ must discuss uncontroverted evidenced he

---

[4] Dr. McClure is a chiropractor and, therefore, his opinion was not entitled to controlling weight under the treating physician rule, but the ALJ was required nonetheless to discuss the weight given to that opinion. *See, e.g., St. Clair v. Apfel*, No. 99-5063, 2000 WL 663958 at *4 (10th Cir. May 22, 2000) (unpublished op.). *See also Garcia v. Callahan*, No. 96-2271, 1997 WL 616150 at *2 (10th Cir. Oct. 7, 1997) (unpublished op.) ("A chiropractor's opinion may corroborate the findings of a treating physician, *see Frey v. Bowen*, 816 F.2d 508, 514 (10th Cir.1987), or show how an impairment affects a claimant's ability to work, *see* 20 C.F.R. § 404.1513(e).").

8

chooses not to rely upon, as well as significantly probative evidence he rejects); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (ALJ may not pick and choose through a medical opinion taking only that parts that are favorable to a finding of nondisability); *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (stating that an ALJ must discuss significantly probative evidence he rejects). The ALJ's discussion of the medical evidence of record is incomplete and his reasons for attributing greater weight to the findings of consultative examiners are not adequately explained or developed.

In addition, Ms. Wortman was seeing a pain specialist, Dr. Schwartz, for management of her pain. AR 240-264. Again, the ALJ discussed evidence from the treatment records of Dr. Schwartz that was favorable to the disability determination, but failed to address other significant evidence indicating the full scope of her pain. The ALJ excerpted from two visits by Ms. Wortman to Dr. Schwartz, one in June 2003 and the other, one month later, in July 2003. AR 17. In June 2003, Dr. Schwartz noted that Ms. Wortman looked much better than at her initial evaluation. AR 252. However, those same notes reflect that ten days earlier she had a migraine headache for which she was required to go to the emergency room for treatment. *Id.* In July 2003, Dr. Schwartz's notes report that Ms. Wortman's headaches had decreased in frequency and that Xanax was working better than Klonopin for her anxiety. AR 246. Other treatment notes with the identical date indicate that Ms. Wortman was "throwing up" from a migraine headache and would not be in for her appointment. AR 249. In a treatment note dated August 2003, Ms. Wortman's pain is reported as being worse. AR 243. In addition, Dr. Schwartz recommended that Ms. Wortman be seen by a pain

9

psychologist and recommended a sleep study. AR 244, 246, 254. He also consulted with Ms. Wortman advising her that she was considered to be "narcotic dependent" and that abrupt cessation of her narcotic medication could result in withdrawal "with potential danger and harm." AR 254. The ALJ did not discuss any of this significantly probative evidence in addressing Dr. Shwartz's treatment of Ms. Wortman.

The ALJ also failed to discuss other evidence relevant to the credibility analysis. The record demonstrates Ms. Wortman takes significant medication for pain and for other conditions including seizures and migraine headaches. Yet, the ALJ did not discuss this medication, or the side effects of the medication, in making his credibility analysis. The record is replete with references to side effects Ms. Wortman suffers from her medication. For example, in 2002 she completed a pain questionnaire and noted that she was taking morphine and the drug made her sleepy. AR 118. In a 1999 consultative examination by Dr. Cail, he noted fatigue as a side-effect of the seizure medication phenobarbital. AR 178, 185. During a May 2002, consultative examination by Dr. Whitehouse, Ms. Wortman reported that her medications "slow her down." AR 203. Significantly, Dr. Whitehouse, made this remark in rendering his assessment: "Questionable mental slowness, but I'm not sure if this is medication induced versus decreased IQ or mental retardation." AR 198. At the time of that examination, her medications included Phenobarbital, Depakote, Morphine, Xanax and Ibuprofen. AR 197. In June 2003, Ms. Wortman reported that the drug Klonopin was causing her drowsiness. AR 252.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  Nevertheless, a court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (quotation omitted).  Here, the ALJ's findings are not closely and affirmatively linked to substantial evidence.  On remand, the ALJ must discuss all the objective medical evidence, addressing the uncontroverted evidence he chooses not to rely upon and significantly probative evidence he rejects.  The ALJ must also discuss the additional factors relevant to the credibility analysis giving particular attention to Plaintiff's medications and their side effects.

### C.     The ALJ's Duty to Develop the Record

Ms. Wortman claims the ALJ failed to comply with his duty to develop the record in the following respects.  First, the ALJ failed to obtain medical records that the Appeals Council, on remand, ordered the ALJ to obtain.  Second, the ALJ failed to obtain updated and pertinent medical evidence that came to the ALJ's attention during the hearing; specifically, treatment records from Dr. Pope and Dr. Hayhurst.  AR 333, 334.

In requesting a remand from the Appeals Council, Ms. Wortman submitted a January 23, 2003, discharge summary from Maryvale Hospital.  AR 302.  That discharge summary

indicates that Ms. Wortman was experiencing left upper and lower extremity paresthesis. *Id.*[5]

In the Appeals Council's June 17, 2005, order remanding the case, the Appeals Council erroneously described the discharge summary as follows:

> The claimant submitted a discharge dated January 23, 2003, from Maryvale Hospital *stating that she was treated for paresthesias of both hands* with a recommendation that she start taking prednisone if her 'sed rate' is high. Additional evidence is needed to evaluate the claimant's hand impairment.

AR 279 (emphasis added). The remand instructions from the Appeals Council directed the ALJ to:

> Obtain additional evidence concerning the claimant's hand impairment in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 C.F.R. 404.1512-1513). *The additional evidence will include updated records from the claimant's medical sources including Maryvale Hospital.* If warranted and available, the Administrative Law Judge may obtain a consultative orthopedic examination and medical source statements about what the claimant can still do despite the impairment.

AR 280 (emphasis added). The ALJ acknowledged the instruction from the Appeals Council to "obtain additional evidence concerning the claimant's hand impairment." AR 14. However, it does not appear that the ALJ obtained additional medical evidence specific to Ms. Wortman's hand impairment following her January 2003 discharge from Maryvale Hospital, nor did he give any explanation for the failure to obtain this evidence.[6] The ALJ's

---

[5]Paresthesia is "[a]n abnormal sensation, such as of burning, pricking, tickling or tingling." *Stedman's Medical Dictionary* 1458-1459 (27th ed. 2000).

[6]The only medical records following this discharge relate to treatment Ms. Wortman received from a pain specialist, Dr. Michael Schwartz, for the time period June 2003 through September
(continued...)

12

failure to do so is contrary to the governing regulations which provide that "[t]he administrative law judge *shall* take any action that is ordered by the Appeals Council . . . ." 20 C.F.R. § 404.977(b) (emphasis added). *See, e.g., Scott v. Chater*, No. 95-7015, 1995 WL 694084 at * 6 (10th Cir. Nov. 24, 1995) (unpublished op.) (reversing and remanding in part due to ALJ's failure to comply with the directives of the Appeals Council on remand); *see also Tauber v. Barnhart*, 438 F. Supp.2d 1366, 1375-1376 (N.D. Ga. 2006) (ALJ erred in failing to follow remand order of Appeals Council which directed further development of the record regarding clamant's ability to alternate between sitting and standing when performing past relevant work).

The ALJ must ensure that the record is adequately developed, and the ALJ generally has a duty to obtain pertinent medical records. *See Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). The ALJ's noncompliance with the remand order of the Appeals Council contravenes his duty to develop the record. The ALJ's failure to obtain the medical records is significant because the ALJ found Ms. Wortman could perform jobs that require frequent handling and fingering with the right hand. AR 340.

It is not clear from the Maryvale Hospital discharge summary that the medical records the ALJ was ordered to obtain relate specifically to her hand impairment.[7] In fact, as noted,

---

[6](...continued)
2003. AR 240-264. Those records reflect that Ms. Wortman continued to experience numbness and tingling in her left upper and lower extremities. *See, e.g.,* AR 246.

[7]The record contains significant evidence of Ms. Wortman's right hand impairment. *See, e.g.,* AR 82, 86, 138, 140-141, 179, 196, 204, 205, 210. This impairment resulted from a "white
(continued...)

it appears the Appeals Council erroneously characterized the discharge notes because those notes refer only to paresthesis of the left upper and lower extremity. However, the record includes evidence of paresthesia bilaterally, *see* AR 198, and also includes evidence of sensory loss most prominent in the left hand.  AR 205.  Therefore, evidence of paresthesia as to the left upper and lower extremity may be significant to the analysis of Ms. Worten's hand impairment.  The ALJ's failure to obtain the medical records from Maryvale Hospital as directed by the Appeals Council requires a remand.

      Ms. Wortman further claims the ALJ erred in his duty to develop the record by not requesting medical records from Dr. Pope, treating Ms. Worten for degenerative problems with her back and neck, osteoarthritis, headaches and seizures, and Dr. Hayhurst, treating Ms. Worten for pain management.  AR 333-334.  The hearing record does not indicate the time period during which Plaintiff received treatment from these physicians.  The hearing was conducted on January 11, 2006, more than one year following the expiration of Ms. Worten's insured status.  Whether these additional records are pertinent is not readily discernible from the present record.  On remand, however, the ALJ is reminded of his duty to develop the record and the ALJ should determine whether, in order to comply with that duty, a need to include these additional records exists.

---

[7](...continued)
matter infection"of the brain Ms. Wortman incurred at age eleven.  AR 140; *see also* AR 205 (longstanding left hemispheric dysfunction).

In sum, each of the claims raised by Ms. Wortman requires a remand. On remand, the ALJ must ensure that the hypothetical questions to the VE relate with precision all of Ms. Wortman's impairments, ensure that his credibility determination takes into account all factors relevant to the analysis of Ms. Wortman's subjective complaints of pain and other symptoms, while giving proper weight and consideration to the objective and other medical evidence of record, and obtain the additional medical evidence necessary to evaluate Ms. Wortman's impairments.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by October  3rd , 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  13th  day of September, 2007.

*/s/ Valerie K. Couch*
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE